UNITED STATES of America

v.

Nasser Ahmed AMERI

No. 4:02–CR–00182–WRW.

United States District Court,
E.D. Arkansas,
Western Division.

Jan. 15, 2004.

Joe Volpe, U.S. Attorney's Office, Little Rock, AR, for U.S.

Lisa Peters, Federal Public Defenders Office, Little Rock, AR, for Defendant.

### *ORDER*

WILSON, District Judge.

 The prosecution has offered bogus credit cards into evidence, although the Defendant is not charged with credit card fraud. He is charged with other types of fraud, as well as being an illegal alien in possession of ammunition.

The prosecution contends that the possession of these cards is "inextricably intertwined with the crimes charged." It relies upon *United States v. Rolett.*[1]

I had not heretofore heard of this evidentiary rule, although research reveals that it has been around for a while. My first reaction was, "this sounds like the hoary *res gestae* doctrine to me."[2] After

---

**1.** 151 F.3d 787 (8th Cir.1998).

**2.** The term *res gestae* was criticized by John Henry Wigmore because of its imprecise meaning. *See* 6 JOHN HENRY WIGMORE, A TREA- TISE ON THE ANGLO-AMERICAN SYSTEM OF EVIDENCE IN TRIALS AT COMMON LAW, § 1767 (3d ed.1940). Wigmore believed the term "ought therefore wholly to be repudiated, as a vicious element in our legal phraseology." Edmund Morgan

researching the question, the theory still appears to be close kin to the generic *res gestae* theory. A liberal view of the "inextricably intertwined" exception to Rule 404(b) would essentially nullify the 404(b) restrictions on "bad act" evidence.

It seems to me that courts should be very chary of admitting "bad act" evidence if it does not pass muster under Rule 404(b). If, for example, the "bad acts" proffered come as a surprise to the defense, surely Rule 403 would preclude admission, absent unusual circumstances. And I am at a loss to understand why "inextricably intertwined" evidence should be allowed to bypass the prohibition against allowing prior "bad acts" to prove character.

Dean Martin and professors Saltzburg and Capra have analyzed this question in their excellent evidence treatise.[3] They write:

> We note that there is no significant cost to requiring a Rule 404(b) analysis; all the prosecution must do is establish a not-for-character purpose for the bad acts evidence, and give pretrial notice, as discussed below. Nor does avoiding Rule 404(b) absolve the Court of the duty, upon request, to provide a limiting instruction. Therefore, we suggest that Rule 404(b) should apply to all specific bad acts proffered by the prosecution, unless such acts occurred in the time period covered by the indictment and are substantively related to the charges.

The D.C. Circuit has gone even one step further, questioning the notion that there should even be an exception from Rule 404(b) for acts that are inextricably intertwined with charged offenses. In *United States v. Bowie*, 232 F.3d 923 (D.C.Cir.2000), a counterfeiting prosecution, the money that led to the charges was discovered on May 16, 1997, when a joint Federal Bureau of Investigation/Metropolitan Police Department narcotics task force executed a search warrant at a Washington, D.C. apartment. An officer outside the apartment noticed a man sitting in the passenger side of a parked car that had Tennessee license plates. The officer engaged in a conversation with the man, who was drinking a beer and listening to loud music. The man consented to a search of the car and indicated that the car belonged to "Boo", who was upstairs in the apartment building. In indicating where "Boo" was, the man motioned toward the apartment where the search was underway. The officers conducting the search found Bowie in the apartment. Bowie identified himself as "Boo" but denied owning the car below. A search of the car resulted in the discovery of more than $3,000 of counterfeit twenty and fifty dollar bills. These were contained inside a console between the driver's and passenger's seats, underneath a pager activation form signed by Bowie and dated May 16, 1997. Other items found included a Maryland traf-

also showed disdain for the term, when he wrote:

> The marvelous capacity of a Latin phrase to serve as a substitute for reasoning, and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in the decisions dealing with the admissibility of evidence as *"res gestae."* It is probable that this troublesome expression owes its existence and persistence in our law of evi-

dence to an inclination of judges and lawyers to avoid the toilsome exertion of exact analysis and precise thinking.

*See* Edmund M. Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J. 229, 229 (1922).

**3.** *See* Stephen A. Salzburg, Michael M. Martin, & Daniel J. Capra, Federal Rules of Evidence Manual § 404.02 (8th ed.2002).

fic ticket issued ten days earlier with Bowie's name and the license number of the car both on it, and a court document that had Bowie's name printed on it and a signature purporting to be his. As the search continued, an additional $90 in counterfeit fifty and twenty dollar bills were inside the pocket of a black leather jacket in the trunk. All of the serial numbers on all of the bills found anywhere in the car were identical.

The Secret Service took Bowie into custody for questioning. Although the agents would testify at trial that Bowie confessed to owning the money and to involving his brother and another person in the counterfeiting effort, the Secret Service found none of Bowie's fingerprints on the bills.

In order to prove Bowie's guilt, the prosecution sought to use evidence of Bowie's earlier arrest for possession of counterfeit money. On the morning of April 17, 1997, Bowie was involved in an automobile accident in a Washington suburb. County police came to the scene and arrested Bowie on an outstanding warrant. The police later did an inventory search of the car and found approximately $1,300 in counterfeit currency inside the pocket of a jacket. One officer involved in Bowie's arrest found an additional $80 in counterfeit bills on the passenger. No counterfeit bills were found on Bowie.

When the officers searched the apartment in which Bowie was found a month later and searched the automobile outside the apartment, they found that the serial numbers on all of the bills discovered in the car matched those on the counterfeit bills later seized a month earlier. Obviously, the match was significant.

Just as the police found items on May 16th that tied the car to Bowie, they had found items on April 17 that did the same. Inside the car that Bowie was driving on the 17th were a bag containing a pair of Reebok shoes and Reebok socks and a receipt from a nearby store. The police went to the store and discovered a $50 counterfeit bill bearing the same serial number as the other $50 bills found in Bowie's car. Although the manager of the store could not positively identify Bowie, the manager recalled that a medium-built man wearing a black leather jacket purchased a pair of Reebok running shoes and Reebok socks with a $50 bill and a couple of twenties. When Bowie was arrested approximately 40 minutes later, he was wearing a black leather jacket.

The Trial Court overruled Bowie's Rule 404(b) objection to the introduction of the April 17th evidence. The Court ruled that Rule 404(b) did not apply because the acts were inextricably intertwined with the charged crime. The court reasoned that, because the serial numbers on the bills seized in April were identical to those seized in May, the April evidence was "in some sense really evidence of the same crime." However, the Court of Appeals criticized the "inextricably intertwined" analysis as an unnecessary limitation on the exclusionary language in the first sentence of Rule 404(b):

> As a practical matter, it is hard to see what function this interpretation of Rule 404(b) performs. If the so-called "intrinsic" act is indeed part of the crime charged, evidence of it will, by definition, always satisfy Rule 404(b).... So far as we can tell, the only consequences of labeling evidence "intrinsic" are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon defense counsel's request.

The Court of Appeals also questioned whether the distinction between intrinsic and extrinsic facts was workable.

Bifurcating the universe into intrinsic and extrinsic evidence has proven difficult in practice. Which of a defendant's acts should be considered the charged crime and which should not is often uncertain. In order to brighten the line separating intrinsic and extrinsic evidence, many courts have focused on the connection between a given crime or act and the charged crime. When evidence is "inextricably intertwined" with the charged crime, courts typically treat it as the same crime. Every circuit now applies some formulation of the inextricably intertwined "test." See *United States v. Rodriguez–Estrada*, 877 F.2d 153, 156 (1st Cir.1989); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Gibbs*, 190 F.3d 188, 217–218 (3d Cir.1999); *United States v. Lipford*, 203 F.3d 259, 268 (4th Cir.2000); *United States v. Morgan*, 117 F.3d 849, 861 (5th Cir.1997); *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995); *United States v. Hughes*, 213 F.3d 323, 329 (7th Cir. 2000); *United States v. O'Dell*, 204 F.3d 829, 833–834 (8th Cir.2000); *United States v. Matthews*, 226 F.3d 1075, 1082 (9th Cir.2000); *United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir.1997); *United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997).

The Court of Appeals concluded that not only is the line between intrinsic and extrinsic offense difficult to draw, but that there is a danger when trial judges seek to find the line:

[T]reating evidence as inextricably intertwined not only bypasses Rule 404(b) and its attendant notice requirement, but also carries the implicit finding that the evidence is admissible for all purposes notwithstanding its bearing on character, thus eliminating the defense's entitlement, upon request, to a jury instruction. See Fed.R.Evid. 105. There is, as well, a danger that finding evidence "inextricably intertwined" may too easily slip from analysis to mere conclusion. What does the "inextricably intertwined" concept entail? When is a defendant's crime or act so indistinguishable from the charged crime that an item of evidence is entirely removed from Rule 404(b)?

We have not defined "inextricably intertwined" in the few Rule 404(b) cases in which we used those terms. Our sister circuits have attempted various formulations. The Seventh Circuit, for instance, examines "whether the evidence is properly admitted to provide the jury with a complete story of the crime on trial, whether its absence would create a chronological or conceptual void in the story of the crime or whether it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime." *United States v. Hughes*, 213 F.3d 323, 329 (7th Cir.2000). According to the Second Circuit, "evidence of uncharged criminal activity is not considered other crimes evidence under Fed.R.Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000).

We do not find these formulations particularly helpful. Some are circular: inextricably intertwined evidence is intrinsic, and evidence is intrinsic if it is inextricably intertwined. Others are over-broad. The "complete the story" definition of "inextricably intertwined" threatens to override Rule 404(b). A defendant's bad act may be only tangentially related to the charged crime, but it nevertheless could "complete the story" or "incidentally involve" the charged offense or "explain the circumstances." If the prosecution's evidence did not "explain" or "incidentally involve" the charged crime, it is difficult to see how it could pass the minimal requirement for admissibility that evidence be relevant.

In the end, the *Bowie* Court concluded that "there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b) in this Circuit. Such broad exclusions have no discernible grounding in the 'other crimes, wrongs, or acts' language of the rule. Rule 404(b), and particularly its notice requirement, should not be disregarded on such a flimsy basis."

To demonstrate its concerns, the Court turned to the *Bowie* facts and concluded that the Trial Court was wrong to have concluded that the April 17th events were inextricably intertwined with the May 16th charged offense. Therefore, Rule 404(b) applied and the prosecution was required to: (1) articulate a not-for-character purpose for the evidence, and (2) provide notice of its intended use at trial. The Court reasoned as follows:

> As to Bowie's case, we do not see how his acts on April 17 constituted the same crime as that charged in the indictment. The authorities seized the counterfeit bills he had in possession on April 17, so the bills he possessed on May 16 could not have been

the same ones. *Contrast United States v. Towne,* 870 F.2d 880, 886 (2d Cir.1989) ("The continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense."). Eleven of the bills—those recovered in April and those seized in May—were doubtless from the same supplier and possibly the same batch, and the evidence indicated that Bowie purchased them at one time. But the indictment charged him only with possession of the counterfeit bills found on May 16. Given the charge, the April evidence was relevant [to prove intent and knowledge]. But it cannot be that all evidence tending to prove the crime is part of the crime. If that were so, Rule 404(b) would be a nullity.

The analysis in *Bowie* has much to recommend it. The "inextricably intertwined" exception substitutes a careful analysis with boilerplate jargon. It may also lead to a trial judge's failure to consider the possible prejudicial effect of other act evidence, since judges are unlikely to exclude evidence that is perceived as part of the charge brought by the government.

The *Bowie* opinion recognized that in a "narrow range" of cases, a bad act can be so close in time and space as to be part of the charged crime. "Rule 404(b), for instance, would not have barred testimony from a witness who saw Bowie put the counterfeit currency in the Pontiac's console. Although such testimony relates to one of defendant's acts, the act is the charged crime of possessing counterfeit currency." In other words, if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic. The same is true of the *Pace* case discussed above. The overt acts, whether or not all are

alleged in the charging instrument or must be proved, are the acts of a conspiracy and there is no need to subject them to a Rule 404(b) analysis.

*Bowie* is a signal that it is unnecessary to create an exception to Rule 404(b) in order to permit the government to offer relevant evidence that supports its case. The *Bowie* opinion affirmed the district court's admission of the April 17th evidence to show knowledge and intent. Similarly, the *Hilgeford* opinion did not need to remove the other act evidence from Rule 404(b) to find it relevant and to hold that the district court did not err in admitting it.[4]

In *Rolett*, the Defendant was charged under the Racketeering Act.[5] As far as I am concerned, all evidentiary bets are off when a Defendant is charged under this Act. As a practitioner, I could never quite wrap myself around the "criminal enterprise" concept.[6] At the very least it is an industrial sized conspiracy theory.

It is difficult for me to conjure up a fact situation where "inextricably intertwined" evidence wouldn't be admissible under Rule 404(b). If this is true, why discard the 404(b) safeguards? Admittedly, hardly anyone believes that the limiting instruction ("not for character purposes") is very helpful to the jury (or for a judge for that matter). It requires a mental finesse that the human mind is not equipped for. But, it is the best we can do.

On the other hand, the notice requirement of 404(b) is manifestly important, and is often crucial if the Defendant is to meet the "bad act" evidence. Be that as it may, the bogus credit cards offered in the case

are admissible under the precise terms of Rule 404(b); so I need not turn to Rule 403 or other considerations.[7]

---

**4.** *Id.*

**5.** *See* 18 U.S.C. §§ 1959, 1961–1968.

**6.** *See United States v. Anderson,* 626 F.2d 1358 (8th Cir.1980).

**7.** Long quotes, such as the one in this Order, are usually disparaged, but the language from this treatise, and *Bowie,* are so apt that I believe it is appropriate to violate the general rule.