# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00476-CR

**Paul Casarez Mata, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
## NO. CR2011-300, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Paul Casarez Mata of murdering his wife, *see* Tex. Penal Code § 19.02(b)(1)–(2), and assessed his punishment, enhanced by a prior felony conviction, at life in the Texas Department of Criminal Justice. *See id.* 12.42(b). In three points of error on appeal, appellant complains about the admission of extraneous-conduct evidence. The parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial. Accordingly, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. Finding no reversible error, we affirm the trial court's judgment of conviction.

## DISCUSSION

### Guilt-Innocence Evidence

During its rebuttal case in the guilt-innocence phase of trial, the State offered the testimony of Cindy Sterling, one of appellant's ex-wives, who testified that appellant was "verbally, mentally, and physically abusive" toward her during their marriage. Sterling detailed appellant's abusive conduct, which included slapping her, striking her with a closed fist, threatening to kill her, packing her belongings and telling her to move out, and ripping up photographs of the two of them during arguments. In his first two points of error, appellant asserts that the trial court erred in permitting this testimony because it was inadmissible character-conformity evidence.[1]

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion only if its determination "lies outside the zone of reasonable disagreement." *Martinez*, 327 S.W.3d at 736; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court's decision to admit evidence of an extraneous offense is generally within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

---

[1] Specifically, in his first point of error, appellant complains about the admission of evidence of physical violence and threats against Sterling. In his second point of error, he complains about the evidence concerning the removal and destruction of Sterling's personal property.

If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, we will uphold that decision. *Id.*; *Sandoval*, 409 S.W.3d at 297.

Texas Rule of Evidence 404(b) prohibits the admission of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character. *See* Tex. R. Evid. 404(b). However, extraneous-offense evidence may be admissible when it has relevance apart from character conformity. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Extraneous offenses may be admissible for some other purpose such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Tex. R. Evid. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990) (op. on reh'g). This list is illustrative—the exceptions are neither mutually exclusive nor collectively exhaustive. *See De La Paz*, 279 S.W.3d at 343. Extraneous-offense evidence may also be admissible to rebut defensive theories raised by the defense. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (rebuttal of defensive theory is "one of the permissible purposes for which [relevant] evidence may be admitted under Rule 404(b)"); *see also Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (recognizing that even defense opening statement opens door to admission of extraneous-offense evidence to rebut defensive theory raised in statement). Further, "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *De La Paz*, 279 S.W.3d at 343 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) *solely* for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (emphasis added) (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)).

Throughout the course of trial, appellant advanced the defensive theory that his wife, Diana Mata, had died of natural causes resulting from a pre-existing medical condition. He alluded to it during jury selection when questioning the venire panel about how to assess the credibility of two medical examiners who offered differing scientific opinions about the cause of death. He developed it through cross-examination of the State's witnesses, particularly the police detective and the State's medical examiner, when he sought to cast doubt on their conclusion that Diana's death was a homicide by suggesting that she had medical conditions the witnesses were unaware of or did not account for. Appellant then raised his defensive theory directly during his opening statement.[2] He presented the testimony of his medical expert, a forensic pathologist, who agreed with the State's medical examiner about the cause of Diana's death (intracranial hemorrhage), but not the manner of her death (homicide).[3] Noting the indications of her existing medical conditions and relying on appellant's description of Diana's behavior the night before her death, the defense expert opined that the intracranial hemorrhage that caused Diana's death was the result of a developing stroke.

---

[2] Appellant's counsel reserved making his opening statement until the presentation of the defense's case-in-chief. During his opening statement, counsel told the jury that this case was about the cause of Diana's death, asserting that "[Diana] had [a] condition and that her cause of death was that condition."

[3] The State's medical examiner testified that Diana had numerous blunt force injuries on her body, including multiple bruises, abrasions, and lacerations to her face, torso, and extremities as well as a broken nose. He described her fatal head injuries, indicating that she had intracranial hemorrhages, including subdural hemorrhage of the brain, intraventricular hemorrhage of the brain, and cerebral edema. He also noted that Diana had hypertensive cardiovascular disease (as evidenced by her enlarged heart) and atherosclerotic cardiovascular disease. Ultimately, based on the history provided to him and the autopsy findings, the State's medical examiner concluded that Diana "died as a result of intracranial hemorrhage due to blunt force injuries with significant contributing factors of atherosclerotic and hypertensive cardiovascular disease" and that the manner of her death was "homicide."

Consequently, he felt that the manner of her death was "undetermined," although he testified that "in [his] heart . . . [he] was thinking it was natural."

The State offered Sterling's testimony about appellant's prior physical violence and threats toward her and appellant's destruction or removal of her personal property. This evidence was offered to rebut appellant's theory that Diana injured herself by falling down when she was having a stroke and died as a result of that stroke, as well as to rebut appellant's explanations for suspicious circumstances the police felt were indicative of discord between appellant and his wife and evidence of his abusive conduct toward her.[4]

Based on the evidence before it, the trial court could have concluded that the evidence of appellant's extraneous prior abusive conduct toward Sterling rebutted the defensive theory presented to the jury. Consequently, we cannot say that the trial court's admission of the complained-of testimony was an abuse of discretion. We overrule appellant's first and second points of error.

**Punishment Evidence**

In his third point of error, appellant contends that he was harmed by the admission of testimony during the punishment phase of trial about his abusive conduct toward his first ex-wife, Lillie Herrera, during their marriage. He argues that her testimony was inadmissible because

---

[4] During a search of appellant's home, police found a box containing Diana's personal belongings. Appellant claimed that her things were boxed up because they were being donated to charity. Officers also found a torn-up photograph of appellant and Diana in the kitchen trash can along with a photo frame that had the phrases "LOVE ONE ANOTHER FROM THE HEART" and "LOVE IS WHAT BINDS US TOGETHER" etched into it.

5

the State failed to comply with the notice provision of article 37.07 of the Texas Code of Criminal Procedure.

Article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of a non-capital criminal trial. *See* Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). Pursuant to the statute, on timely request of the defendant, the State must give reasonable advance notice of its intent to introduce evidence of extraneous crimes or bad acts not resulting in final convictions. *Id.* art. 37.07, § 3(g). To trigger the State's obligation to comply with this notice requirement, a defendant must either: (1) serve the State with a request for notice, or (2) file a discovery motion requesting the court to order such notice and secure a ruling thereon. *Henderson v. State*, 29 S.W.3d 616, 625 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (citing *Mitchell v. State*, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998)).

The record reflects that appellant filed a self-executing request entitled *Defendant's Request for Notice of State's Intention to Use Evidence of Extraneous Offenses at Trial*. In it, appellant requested "written reasonable notice, at least ten days prior to the commencement of trial of intent to introduce evidence of extraneous crimes or bad acts." However, appellant's request was only filed and served on the State on the day of trial, just before the commencement of jury selection. The State's duty to give advance notice is triggered by the defendant's *timely* request. *See* Tex. Code Crim. Proc. art. 37.07, § 3(g); *Randon v. State*, 107 S.W.3d 646, 651 (Tex. App.—Texarkana 2003, no pet.). Appellant's request made on the day the trial began was untimely and failed to trigger the State's obligation to provide the requisite notice.

6

A comparable request for notice was also made in appellant's *Motion for Discovery of Punishment Evidence*, filed approximately three months before trial. However, when a defendant relies on a pretrial motion to request notice of the State's intent to introduce extraneous-offense evidence, "it is incumbent upon him to secure a ruling on his motion in order to trigger the notice requirements of that rule." *Simpson v. State*, 991 S.W.2d 798, 801 (Tex. Crim. App. 1998) (quoting *Espinosa v. State*, 853 S.W.2d 36, 39 (Tex. Crim. App. 1993)); *Mitchell*, 982 S.W.2d at 427. Here, appellant filed the motion asking the trial court to order the State to disclose punishment evidence, but he failed to secure a ruling on it before trial. In fact, the record reflects that appellant only sought a ruling on the motion at the beginning of the punishment phase, on the sixth day of trial. Accordingly, the State had no duty to provide advance pretrial notice of its intent to introduce extraneous-offense evidence during the punishment phase of trial.

Because appellant neither made a timely self-executing request for notice nor secured a ruling on his discovery motion ordering the State to provide notice, the trial court did not abuse its discretion in admitting the testimony of appellant's first ex-wife concerning his prior abuse against her. *See Davis v. State*, 329 S.W.3d 798, 802 (Tex. Crim. App. 2010) (review of trial court's decision to admit punishment evidence is for abuse of discretion). We overrule appellant's third point of error.

## CONCLUSION

Finding no abuse of discretion in the admission of the complained-of evidence, we affirm the trial court's judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   June 24, 2014

Do Not Publish

8