

IN THE
TENTH COURT OF APPEALS

No. 10-11-00437-CR

HORREESE BERNARD BAILEY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2008-1695-C2

MEMORANDUM OPINION

Appellant, Horreese Bernard Bailey, challenges his conviction for sexual assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(a), (f) (West 2011). In two issues, Bailey contends that the trial court erred: (1) by allowing evidence of an extraneous sexual assault for irrelevant purposes other than establishing "consent"; and (2) in instructing the jury that it could consider evidence of an extraneous sexual assault for purposes not relevant to the trial. For the reasons expressed herein, we affirm.

# I.    BACKGROUND

On the morning of July 7, 2007, Shawn Etchison, an officer with the Waco Police Department, was dispatched to Providence Hospital in McLennan County, Texas, to investigate an alleged sexual assault. Upon arriving at the hospital, Officer Etchison interviewed Amanda Goggans, a patient at the hospital. Initially, Goggans was upset, crying, and non-responsive to Officer Etchison's questioning; however, she later accused Bailey of raping her. Thereafter, Goggans submitted to a sexual-assault exam.

Officer Etchison then questioned Bailey about Goggans's allegations. Bailey, a nurse at the hospital, admitted to having sexual intercourse with Goggans while Goggans was a patient at the hospital, but he claimed that the interaction was consensual. Bailey gave a written statement to police in which he recounted his version of the encounter. In particular, Bailey contended that he was Goggans's nurse and that Goggans and a friend who was visiting flirted with him on the evening of the incident. Bailey also alleged that Goggans kissed him and initiated the sexual encounter and that she gave him her contact information after the encounter. Subsequently, investigators requested a buccal swab from Bailey's mouth to compare with the results from Goggans's sexual-assault exam. Erin Casmus, a forensic scientist with the Texas Department of Public Safety, confirmed that DNA extracted from semen detected on vaginal and anal swabs from Goggans was indeed Bailey's.

Goggans testified that she had been admitted to the hospital a few days prior to the incident because of pneumonia. Goggans recalled seeing Bailey before on the same floor in April 2007, when her mother was a patient at the hospital. Melanie Alvarado,

previously a nurse technician at the hospital, testified that Bailey requested that the charge nurse, Brenda Mauk, add Goggans as an additional patient for his rounds. Mauk granted Bailey's request; thus, he served as Goggans's nurse during her stay at the hospital.

On the evening of the incident, Goggans's friend, Sarah Reyes, visited Goggans in the hospital. According to Reyes, Bailey entered Goggans's room on two occasions during Reyes's visit, but Reyes and Bailey did not interact beyond an introduction. Bailey, on the other hand, asserted that Reyes and Goggans were giggling and flirting with him while he was in Goggans's room. Specifically, in his written statement, Bailey alleged that Reyes and Goggans were "making eyes" at him and that they were "talking about my [Bailey's] butt and how good I look." In any event, after Reyes left, Bailey entered Goggans's room numerous times.[1] Goggans alleged that, at this time, Bailey began to make flirtatious comments about her appearance and helped her brush her hair. At some point during the early morning hours of July 7, 2007, Goggans requested a breathing treatment. However, Goggans testified that prior to getting the breathing treatment, Bailey climbed into the hospital bed with her, licked her ear, and attempted to remove her pants. Thereafter, Bailey allegedly groped Goggans's breasts, stuck his finger in her vagina, and penetrated her vagina with his penis from behind.

---

[1] The record indicates that the hospital used technology that tracked the whereabouts of the hospital's nurses. The tracking technology revealed that Bailey visited Goggans's room twenty-six times for the twelve-hour period from 7:00 p.m. on July 6, 2007 to 7:00 a.m. on July 7, 2007. In comparison, the next most frequented room by Bailey was the room adjacent to Goggans's, which Bailey visited sixteen times during the relevant time period. In addition, the hospital's tracking technology and security cameras indicated that Bailey removed his tracking device just before the time that Goggans alleged she was sexually assaulted.

Later that night, once she was alone, Goggans called her sister to tell her about the incident. Goggans's sister then called the hospital and spoke to Nurse Mauk, who recalled that Goggans's sister asked for the identities of all the nurses working that night and threatened legal action.[2] After speaking with Goggans's sister, Nurse Mauk immediately met with Goggans, who was extremely upset at this time. Goggans told Nurse Mauk that Bailey had raped her. Upon receiving this information, Nurse Mauk contacted her supervisor and the police were called.

Nurse Mauk then confronted Bailey in the hospital's break room. With regard to her conversation with Bailey, Nurse Mauk recalled the following:

> He [Bailey] told me that, yes, he had had sex with her. He told me—because I asked him. He told me it was consensual, that she had been begging him to all night long or whatever. I told him, no, you can't do that, it doesn't matter. He kept on insisting that it was consensual, but yet he was very nervous. And—
>
> . . . .
>
> Well, at one point he pulled out a piece of paper and it was—it looked like it was in female handwriting and it was kind of, like, in a pink ink. And it had her name, address[,] and telephone number on it. And he said, see, see, see, she gave me her telephone number. And I still told him, I said, you still can't do that, you know. I even asked him, did you miss ethics that day they taught it in nursing school. I mean, we were taught that you can't under any circumstances have sex with a patient.

Nurse Mauk then spoke to Goggans again regarding Bailey's version of the story. Goggans noted that she gave Bailey her phone number because he had continually

---

[2] During questioning by Bailey's trial counsel on cross-examination, Goggans admitted that she brought a claim against the hospital pertaining to the incident and that she recovered a $150,000 settlement from the hospital.

harassed her for it. Nurse Mauk also testified that, after she spoke to Goggans and Bailey, Bailey tried to go into Goggans's room several times, which she prevented.

At trial, the State was allowed to present evidence of an extraneous offense with which Bailey was involved. Over Bailey's objection, the State presented evidence showing that Bailey had allegedly sexually assaulted another patient at the hospital a few days before the incident with Goggans. Prior to presenting this evidence, the State argued that the evidence was admissible because Bailey had raised the issues of consent and falsification of testimony for pecuniary gain. The State also argued that the extraneous-offense evidence was admissible because of the similarities of the alleged crimes and because the evidence is relevant to consent, credibility, and opportunity. Relying on this Court's opinion in *Yarbrough v. State*, No. 10-06-00328-CR, 2008 Tex. App. LEXIS 9056, at **4-7 (Tex. App.—Waco Nov. 26, 2008, pet. ref'd) (mem. op., not designated for publication) and Texas Rule of Evidence 404(b), the trial court overruled Bailey's objection and admitted the extraneous-offense evidence. *See* TEX. R. EVID. 404(b).

Nurse Peggi Sheppard testified that, on July 3, 2007, she performed a sexual-assault examination on another hospital patient, Pamela Barajas, who also claimed that Bailey had raped her. Sheppard recounted that Barajas told her that, on July 2, 2007, Bailey climbed onto her when she was asleep, kissed both sides of her neck, raped her, and threatened to kill her and her family if she told anyone about the incident. Afterwards, Barajas gave Bailey her phone number.

Subsequent to Barajas's outcry, Bailey was interviewed by Andrew Degnan, then a detective in the Special Crimes Unit at the Waco Police Department. Degnan recalled that Bailey initially told him that "he did not have sexual intercourse with that woman [Barajas], that she was coming onto him." However, Bailey's story later changed. Degnan testified that Bailey told him that "she [Barajas] jerked him off, inserted his penis in her mouth and was licking it and eventually it led to where she pulled him on top of her and his penis inserted into her vagina and they had sex." Bailey also said that the sex with Barajas was consensual, Barajas was flirting with him, and Barajas wanted to give him her phone number. In any event, a sexual-assault exam was performed on Barajas, which excluded Bailey. But, Barajas's husband testified that, on the night of the incident, his wife had gone home, showered, and douched.[3]

At the conclusion of Nurse Sheppard and Degnan's testimony, the trial court gave the jury a limiting instruction, citing the purpose of the extraneous-offense evidence in terms of Texas Rule of Evidence 404(b). *See id.* Specifically, the trial court's instruction was as follows:

> All right. Ladies and gentlemen of the jury, you are instructed that if there is any testimony before you in this case regarding the Defendant having committed any offenses, if any, other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity[,] or absence of mistake or accident on the part of the Defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case and for no other purpose.

---

[3] Barajas's husband also testified that his wife passed away from a heart attack on March 22, 2009.

In fact, the trial court gave this instruction a couple times during the latter parts of the guilt-innocence phase of trial. Neither Bailey nor the State objected to the instruction or indicated that the instruction was somehow inadequate.[4]

At the conclusion of the evidence, the jury found Bailey guilty of sexual assault and sentenced him to twenty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 22.011(a). This appeal followed.

## II.    EXTRANEOUS-OFFENSE EVIDENCE

In his first issue, Bailey asserts that the trial court erred in admitting extraneous-offense evidence pertaining to the Barajas incident over his objection. Specifically, Bailey contends that the extraneous-offense evidence was admitted for irrelevant purposes other than the only relevant purpose which was "consent."

---

[4] The jury charge contained the following instruction regarding extraneous-offense evidence:

> You are instructed that if there is testimony before you in this case regarding the defendant having committed any offenses, if any, other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident on the part of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

Bailey did not object to this jury instruction at the charge conference.

## A.    Applicable Law

"An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review." *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court's ruling will be upheld if it is found to be within the zone of reasonable disagreement. *See id.*; *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). A trial court's ruling on extraneous-offense evidence is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)).

"An appellate court would misapply the appellate abuse of discretion standard of review to reverse a trial court's admissibility decision solely because the appellate court disagreed with it." *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006). A trial court's ruling on the admissibility of evidence will be upheld if the record reasonably supports the ruling and is correct under any theory of law applicable to the case. *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

"The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929, 344 U.S. App. D.C. 34 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)).

Rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Further, extraneous offenses are admissible to rebut theories raised by the testimony of a defense witness during direct examination or a State's witness during cross-examination. *See Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005); *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1996).

**B.    Discussion**

The record reflects that, throughout the entire guilt-innocence phase of trial, Bailey's defensive theory was that Goggans consented to the sexual encounter. And, Bailey admits as much in his appellate brief. Relying on the Texas Court of Criminal Appeals' decision in *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007), this Court has noted that "when the defensive theory of consent is raised in a prosecution of sexual assault, the defendant necessarily disputes his intent to engage in the alleged conduct without the complainant's consent and places his intent to commit sexual assault at issue." *Yarbrough v. State*, 2008 Tex. App. LEXIS 9056, at *6. Therefore,

because his defensive theory centered on consent, Bailey necessarily challenged the intent element of the crime. *See id.*; *see also Casey*, 215 S.W.3d at 880. And as such, under Rule 404(b), the State was entitled to present extraneous-offense evidence to rebut Bailey's defensive theory. *See* TEX. R. EVID. 404(b).

We also note that the nature of the extraneous-offense evidence presented by the State also likely fell within the opportunity and plan exceptions contained in Rule 404(b) and as evidence of modus operandi, especially considering the numerous similarities between the Barajas incident and the incident in this case. *See* TEX. R. EVID. 404(b); *see also Webb v. State*, 995 S.W.2d 295, 298 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (noting that when the State seeks to admit extraneous-offense evidence under a theory of modus operandi, the State must show the extraneous-offense which was committed by the defendant was so nearly identical in method to the charged offense as to earmark them as the handiwork of the accused (citing *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992))).

Nevertheless, Bailey also appears to argue that the trial court's limiting instruction was erroneous because it instructed that the jury could consider the extraneous-offense evidence for not only the issue of consent but also "motive, opportunity, . . . preparation, plan, knowledge, identity, and absence of mistake or accident." We first note that the list contained in the trial court's limiting instruction tracks the list contained in Rule 404(b), which is the rule of evidence pertaining to the admissibility of evidence of other crimes, wrongs, or acts. *See* TEX. R. EVID. 404(b); *see also Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that a jury

instruction that tracks statutory language "will not be deemed error on the part of a trial judge"). In addition, Bailey neither objected to the instruction provided nor did he request a different limiting instruction that he deemed to be appropriate in this case. *See* TEX. R. APP. P. 33.1(a)(1) (providing that a timely, specific objection is required to preserve an argument for appellate review); TEX. R. EVID. 105 (stating that, upon request, the trial court "shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal"); *see also Lacaze v. State*, 346 S.W.3d 113, 121-22 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding that where the trial court instructs the jury not to consider evidence for the truth of the matter asserted, "any error with respect to the hearsay instruction has not been preserved for our review in the absence of appellant's request for a different instruction in the trial court").

And finally, the Texas Court of Criminal Appeals has held that even if evidence is admitted for the wrong reason, but is admissible for another reason, a reviewing court will not find reversible error. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Deleon v. State*, 126 S.W.3d 210, 214 n.3 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Perez v. State*, No. 07-10-0147-CR, 2011 Tex. App. LEXIS 5724, at *16 n.13 (Tex. App.—Amarillo July 26, 2011, pet. dism'd) (mem. op., not designated for publication). Therefore, even if the trial court admitted the extraneous-offense evidence for other purposes outlined in Rule 404(b), which, as Bailey argues, may not be applicable, the fact that the evidence is admissible under the opportunity, plan, and

intent exceptions to Rule 404(b) and as evidence of modus operandi does not support a finding of reversible error. *See Romero*, 800 S.W.2d at 543; *Deleon*, 126 S.W.3d at 214 n.3; *see also Perez*, 2011 Tex. App. LEXIS 5724, at *16 n.13.

Therefore, based on the foregoing, we cannot conclude that the trial court's ruling was outside the zone of reasonable disagreement. *See De La Paz*, 279 S.W.3d at 344; *see also Weatherred*, 15 S.W.3d at 542. Accordingly, the trial court did not abuse its discretion in admitting the extraneous-offense evidence over Bailey's Rule 404(b) objection. *See Weatherred*, 15 S.W.3d at 542. Bailey's first issue is overruled.

### III. THE EXTRANEOUS-OFFENSE INSTRUCTION IN THE JURY CHARGE

Bailey's second issue is strikingly similar to his first issue, except that it pertains to the jury charge. In particular, he argues that the extraneous-offense instruction in the jury charge is erroneous because it does not instruct the jury to only consider the extraneous-offense evidence for the purpose of "consent."

### A. Applicable Law

In analyzing a complaint of jury-charge error, we first determine whether or not there was an error in the charge. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If we find that there was an error, we must then determine if the error caused sufficient harm to warrant reversal. *Id.* The standard for determining harm depends on whether or not an appellant properly preserved error in the jury charge. *Id.* Reversal is required for a jury-charge error when the defendant has properly objected to the charge and we find "some harm" to his rights. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). However, as stated earlier, Bailey did not object to the jury

charge at the charge conference; therefore, assuming charge error, Bailey must show that the alleged errors caused him to suffer egregious harm.  *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); *Almanza*, 686 S.W.2d at 171.  Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory.  *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005).

We must review the entire jury charge, the evidence, the arguments of counsel, and any other relevant information in order to determine whether the alleged error was so egregious that appellant was denied a fair and impartial trial.  TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006); *see Almanza*, 686 S.W.2d at 171.  Thus, we review alleged charge error by considering:  (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal.  *See Posey v. State*, 966 S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998).

**B.    Discussion**

In this issue, Bailey appears to complain that the extraneous-offense instruction in the jury charge does not explicitly reference the term "consent," which was his only defensive theory.  As we have stated earlier, this Court and the Texas Court of Criminal Appeals have held that the term "consent" is synonymous with intent—a term that is contained in Rule 404(b) and was listed in the instruction contained in the jury charge. *See Casey*, 215 S.W.3d at 880; *see also Yarbrough*, 2008 Tex. App. LEXIS 9056, at *6. Therefore, we cannot say that the instruction in the jury charge improperly excluded Bailey's sole defensive theory for consideration by the jury.  Furthermore, we note that

the extraneous-offense instruction in the jury charge tracks the language of Rule 404(b) and that Texas courts have held that "[a] jury charge which tracks the language of a particular statute is a proper charge on a statutory issue." *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994); *see Martinez*, 924 S.W.2d at 699.

And to the extent that Bailey argues that the language of the jury charge is erroneous because it does not narrow the Rule 404(b) instruction, we reiterate that the extraneous-offense evidence presented by the State fell within several of the exceptions of Rule 404(b); that he did not object to the instruction in the trial court; and that he does not propose alternate language that should have been used in the charge. *See* TEX. R. EVID. 404(b). In addition, the First Court of Appeals recently addressed a similar complaint and noted the following:

> In *Blackwell v. State*, we were presented with a jury charge with nearly identical language. We concluded that the charge properly limited the jury's reliance on extraneous[-]offense evidence to rebut a frame-up defense because the charge limited the jury's consideration to the exceptions enumerated under Rule 404(b). Although the charge here, like the one in *Blackwell*, instructed the jury that it could consider the extraneous[-]offense evidence for any of the Rule 404(b) purposes rather than only the one in dispute, we concluded in *Blackwell*, as we do here, that the additional language was mere surplusage that the jury could have disregarded as irrelevant. While the jury charge was not as narrowly tailored as it could have been, it properly instructed the jury to consider the extraneous[-]offense evidence for only the purposes permitted by Rule 404(b), one of which Brown had disputed at trial. We therefore find no error in the charge.

*Brown v. State*, No. 01-11-00462-CR, 2012 Tex. App. LEXIS 4150, at **19-20 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op., not designated for publication)

(internal citations omitted)[5]; *see Blackwell v. State*, 193 S.W.3d 1, 16 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (concluding that, when lack of intent or motive was a defensive theory, instructions that the jury could consider extraneous-offense evidence for no purpose other than those listed in Rule 404(b) properly restricted the jury's use of the evidence).

We conclude that the language of the extraneous-offense instruction contained in the jury charge in this case properly instructed the jury to consider the extraneous-offense evidence for only the purposes permitted by Rule 404(b), one of which Bailey disputed at trial.[6]  *See Blackwell*, 193 S.W.3d at 16; *see also Brown*, 2012 Tex. App. LEXIS

---

[5] The extraneous-offense instruction in the *Brown* jury charge, which is virtually identical to the jury-charge instruction in this case, stated the following:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity[,] or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

*Brown v. State*, No. 01-11-00462-CR, 2012 Tex. App. LEXIS 4150, at **17-18 (Tex. App.—Houston [1st Dist.] May 24, 2012, no pet.) (mem. op., not designated for publication).

[6] We also find it noteworthy that Bailey did not object to the prosecutor's closing argument wherein he explained:

> There is testimony [sic] evidence before you about an extraneous offense[,] and there's an instruction from the Court on extraneous offenses.  Extraneous offenses are admitted for very limited purposes, and the Judge put out an instruction here about why you may consider this extraneous offense.  Extraneous offenses aren't put before you so you can say, oh, he's a bad guy, we need to find him guilty.  They are put before you for particular reasons.
>
> . . . .
>
> But it's important that you—that you use this extraneous offense to—for the things it's intended for.  And that's for motive, intent, the lack of consent of Ms. Goggans.  And one

4150, at **19-20. We therefore find no error in the charge. *See Middleton*, 125 S.W.3d at 453; *Blackwell*, 193 S.W.3d at 16; *see also Brown*, 2012 Tex. App. LEXIS 4150, at **19-20. Accordingly, we overrule Bailey's second issue.

## IV. CONCLUSION

Having overruled both of Bailey's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed October 11, 2012
Do not publish
[CR25]

---

thing the defense raised during cross-examination of witnesses, oh, that room is so close, how would you have the opportunity. Well, there's no argument that it happened. So, obviously, he had the opportunity. But he had the same opportunity with Ms. Barajas also to be done against her consent and within close proximity to other people.