**Opinion filed November 20, 2014**



## In The

# Eleventh Court of Appeals

_____

## Nos. 11-12-00271-CR & 11-12-00272-CR

_____

## BRANDI ELAINE HARRIS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause Nos. 18540B & 18541B**

## M E M O R A N D U M   O P I N I O N

Brandi Elaine Harris appeals her jury convictions for credit card abuse and theft arising out of a single criminal episode.[1]  *See* TEX. PENAL CODE ANN. § 32.31 (West 2011), § 31.03(e)(4)(D) (West Supp. 2014).   At the punishment phase, Appellant pleaded "true" to two previous state jail felony convictions.  For each

---

[1]The credit card abuse conviction arises out of trial court cause no. 18540B and bears our cause no. 11-12-00271-CR.  The theft conviction arises out of trial court cause no. 18541B and bears our cause no. 11-12-00272-CR.  The two cases were tried together.  Appellant has filed identical briefs in each appeal.

conviction, the jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of ten years and a fine of $7,500, with the sentences to run concurrently. In two issues on appeal, Appellant argues that the trial court abused its discretion when it admitted evidence of her extraneous bad acts and that the evidence presented at trial was insufficient to show that she committed the offense of theft. We affirm.

*Background Facts*

Appellant was charged by indictment with the offenses of credit card abuse and theft. The indictment in trial court cause no. 18540B alleged that, on or about March 5, 2012, Appellant intentionally and knowingly used a credit card with knowledge that the card had not been issued to her and without the effective consent of the cardholder with the intent to fraudulently obtain property and services. The indictment in cause number 18541B alleged that, on or about March 5, 2012, Appellant intentionally and knowingly appropriated a purse and contents from its owner without the effective consent of the owner and with the intent to deprive the owner of the property.

Amy Packer, a second grade teacher at Taylor Elementary in Abilene, testified that she noticed her purse was missing from her classroom on the afternoon of March 5, 2012. She had previously placed the purse in an unlocked drawer in her desk at approximately 12:30 p.m., and she discovered that it was missing sometime between 1:30 p.m. and 2:30 p.m. Amy stated that the purse contained a pair of brown Ray-Ban sunglasses; a Samsung smartphone; a Panasonic Lumix digital camera; and a red leather wallet that held $25 to $50 in cash, a Citibank Visa credit card, and various gift cards worth $100. Amy subsequently called the police and reported that her purse had been stolen. Amy also called Sprint and cancelled service to her cell phone. Amy was unable to reach her husband, but she left him a voice mail detailing the situation.

Jay Packer, Amy's husband, testified that he learned that his wife's purse had been stolen on the afternoon of March 5, 2012, while he was teaching at another campus. He first called Citibank to cancel Amy's credit card and found out that an unauthorized charge had been made to the card. Jay then called Sprint and initiated global positioning system (GPS) tracking on Amy's cell phone. He next called the Abilene Police Department and provided them with the location of the cell phone as reported to him by Sprint. Jay testified that the GPS tracking showed that the cell phone traveled North on FM 600 and then headed west on Highway 180 before it eventually stopped in the southeast corner of Bethel Cemetery.

Detective Jeff Cowan testified that, on the afternoon of March 5, 2012, he received a call about a man tracking his wife's stolen cell phone, which was traveling North on FM 600. Detective Cowan then called Jay and learned that Amy's purse had been stolen from Taylor Elementary between 12:30 and 12:50 that afternoon. Detective Cowan next sent Detective Christopher Adams to the school where Jay worked in order to monitor the location of the stolen cell phone. In a caravan with five other officers, Detective Cowan then began to drive North on FM 600. Detective Cowan and the other officers received updates about the location of the cell phone from Detective Adams over the police radio. The cell phone eventually came to a stop in a cemetery in Jones County.

Once at the cemetery, the officers determined that the cell phone was located in a Jeep Grand Cherokee registered to Appellant's father. Detective Cowan made contact with Appellant's father and informed him that the GPS tracking on a cell phone in a stolen purse had led the officers to the Jeep Grand Cherokee. Detective Cowan testified that Appellant's father asked Appellant if she had found a purse. Appellant stated that she had found a purse and that she was going to return it.

After Appellant gave the purse to Detective Cowan, she was taken into custody for theft of the purse. Detective Cowan later confirmed that the purse, as well as the sunglasses Appellant was wearing at the time of her arrest, belonged to Amy. Amy recovered her purse and sunglasses at the police department later that afternoon. Her camera and a small amount of cash were missing from the purse. The credit and gift cards in Amy's wallet had also been removed from their respective slots and were stacked on top of each other inside the wallet.

Detective Cowan subsequently learned that Amy's credit card had been used at Turtle Hole Auto Bath in Abilene at 1:04 p.m. on March 5, 2012. Terry Gerhart, a fraud investigator for Citigroup, confirmed the use of Amy's credit card at the car wash. Amy stated that she did not go to a car wash that day and that she was teaching at the time her credit card was used. Detective Cowan stated his belief that "more than likely" Appellant had been the person who used the card.

*Analysis*

In her first issue in each appeal, Appellant contends that the trial court abused its discretion when it admitted evidence of an extraneous bad act. Appellant claims that the admission of the extraneous offense evidence violated Rules 404(b) and 403 of the Texas Rules of Evidence. During the guilt/innocence phase, the trial court conducted a hearing outside the presence of the jury on the State's request to admit evidence of an extraneous act allegedly committed by Appellant. Tammy Harris[2] testified that on July 9, 2011, she and her sister-in-law were at a garage sale in Abilene when she noticed an individual in the backseat of her sister-in-law's vehicle. Harris ran over to the vehicle and found Appellant holding purses belonging to Harris and her sister-in-law. Harris asked Appellant what she was doing, and Appellant claimed that she had found the purses in the unlocked vehicle and was bringing them to the women in order to prevent them

---

[2]Tammy Harris and Appellant are not related.

from being stolen. Harris doubted Appellant's story and instead believed that Appellant was attempting to steal the purses. Appellant returned the purses, and Harris reported Appellant's behavior to the Abilene Police Department. Officer Jacob Weise testified that he responded to Harris's theft call on July 9, 2011. After he arrived at the scene, Appellant told Officer Weise that she had found the purses in the unlocked vehicle and was going to return them.

The State sought to offer the testimony of Harris and Officer Weise for the limited purposes of showing intent and lack of mistake on the part of Appellant with respect to her possession of Amy's purse. Appellant objected to the admissibility of this evidence on the basis that its prejudicial effect exceeded its probative value. The trial court found the testimony of Harris and Officer Weise to be relevant and more probative than prejudicial. The court specifically noted that the evidence was probative of Appellant's intent, plan, and absence of mistake. The trial court subsequently granted Appellant's request for a limiting instruction at the time of the admission of the evidence. The trial court instructed the jury that the evidence of the circumstances of Appellant's possession of the other women's purses was admissible only to show Appellant's intent, plan, or absence of mistake.

We review a trial court's decision to admit or exclude extraneous offense evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will reverse a trial court's ruling that an extraneous offense has relevance apart from proving conformity with the defendant's character only if the ruling is outside the zone of reasonable disagreement. *Id.* at 343–44. Likewise, we give deference to a trial court's determination that the probative value of the evidence is not outweighed by the danger of unfair prejudice. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

5

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith under Rule 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. *De La Paz*, 279 S.W.3d at 343. "Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)). Whether evidence of "other crimes, wrongs, or acts" has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

We conclude that the trial court did not abuse its discretion in determining that the evidence pertaining to the circumstances of Appellant's possession of the other women's purses had relevance apart from character conformity. The challenged evidence concerned a very similar circumstance involving Appellant's possession of other women's purses. Appellant had given the same dubious explanation on the previous occasion as she gave to Detective Cowan at the cemetery. Accordingly, the evidence of Appellant's extraneous act addressed the issue of her intent and purpose with regard to her possession of Amy's purse.

Even when evidence of an extraneous offense is permissible under Rule 404(b), however, it may be excludable under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. In conducting a Rule 403 analysis, the

6

following factors should be taken into consideration: (1) the inherent probative force of the proffered evidence; (2) the proponent's need for that evidence; (3) any tendency of the evidence to suggest a decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issues; (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). We uphold a trial court's ruling on a Rule 403 balancing test, whether explicit or implied, if it is within the zone of reasonable disagreement. *See Jabari v. State*, 273 S.W.3d 745, 753 (Tex.App.—Houston [1st Dist.] 2008, no pet.).

The evidence of Appellant's possession of the other women's purses and her explanation for their possession was probative because it made her misappropriation of Amy's purse more probable. While the challenged evidence was prejudicial to Appellant, we do not think that the evidence had a tendency to confuse or distract the jurors from the main issues in an irrational way or that its presentation consumed an inordinate amount of time or merely repeated evidence that was already admitted. As noted previously, the trial court granted Appellant's request for a limiting instruction at the time the challenged evidence was admitted. The trial court additionally included a limiting instruction in the court's charge. We generally presume that the jury follows the trial court's instructions in the manner presented. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). We conclude that the trial court's balancing under Rule 403 was within the zone of reasonable disagreement. Accordingly, the trial court did not abuse its discretion by concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. Appellant's first issue in each appeal is overruled.

In her second issue in each appeal, Appellant challenges the sufficiency of the evidence supporting her theft conviction. She contends that there was no evidence that she took the purse from Amy's school or that she exercised exclusive control of the purse at the cemetery. We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The offense of theft occurs when a person unlawfully appropriates property with the intent to deprive the owner of that property. PENAL § 31.03(a). The term "appropriate" includes both acquiring and otherwise exercising control over the property. *Id.* § 31.01(4)(B). Appropriation is unlawful when (1) it is without the owner's effective consent or (2) the property is stolen and the defendant appropriates the property knowing it was stolen by another. *Id.* § 31.03(b). "Deprive" means to dispose of property in a manner that makes recovery of the property by the owner unlikely. *Id.* § 31.01(2)(C). Intent to deprive is determined

8

from the words and acts of the accused. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. [Panel Op.] 1981). To this end, "evidence sufficient to show an accused exercised control over property without consent of the owner, intending to deprive him of it, is always enough to prove theft." *Chavez v. State*, 843 S.W.2d 586, 588 (Tex. Crim. App. 1992).

If an accused is found in possession of recently stolen property and, at the time of her arrest, fails to make a reasonable explanation showing her honest acquisition of the property, the jury may draw an inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App. 1983); *see Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007) (unexplained or unreasonably explained possession of recently stolen property by the defendant may raise an inference of guilt). Abilene police officers found Amy's purse in Appellant's possession within a short time after it was discovered to be missing. It is significant to note that Appellant was wearing Amy's sunglasses at the time she was apprehended. This evidence refuted Appellant's claim that she found Amy's purse and intended to return it. Additionally, the fact that Appellant may not have been in exclusive possession of Amy's purse is not controlling because joint control over recently stolen property does not destroy the inference of guilt. *See Ross v. State*, 463 S.W.2d 190, 191 (Tex. Crim. App. 1971) (concluding evidence was sufficient to support conviction for theft where defendant and another exercised joint control over stolen property). Viewing the evidence in a light most favorable to the verdict, the evidence presented at trial was sufficient for a rational jury to determine that Appellant committed the offense of theft. Accordingly, Appellant's second issue in each appeal is overruled.

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY

JUSTICE

November 20, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.