

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00194-CR

**DON DOYLE GORDON, JR.,**

                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                        **Appellee**

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. DC-F202100483

## MEMORANDUM OPINION

Appellant, Don Doyle Gordon, was convicted of one count of burglary of a habitation with intent to commit a felony and one count of stalking. *See* TEX. PENAL CODE ANN. §§ 30.02, 42.072. In three issues, Gordon challenges the sufficiency of the evidence supporting his convictions in both counts, and he contends that the trial court erred by allowing testimony of a prior bad act in violation of Texas Rules of Evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b). We affirm.

## Background

Gordon was charged by indictment with one count of burglary of habitation with intent to commit a felony and one count of stalking. The indictment also contained two enhancement paragraphs that referenced Gordon's prior felony convictions for possession of a controlled substance of four grams or more, but less than 200 grams, and burglary of a habitation. After a trial, the jury found Gordon guilty of both charges and also found the second enhancement paragraph to be true for both charges.[1] For the offense of burglary of a habitation with intent to commit a felony, the jury assessed punishment at sixty years in prison with a $10,000 fine. For the stalking offense, the jury assessed punishment at twenty years in prison with a $10,000 fine. The trial court certified Gordon's right of appeal. Gordon filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(c). This appeal followed.

## Stalking

In his second issue, Gordon challenges the sufficiency of the evidence supporting his conviction for stalking. Specifically, Gordon contends that the evidence is insufficient because J.B., the complainant, took part in harassing behavior as much as Gordon, and because J.B. initiated most contact between the two parties. Gordon further asserts that

---

[1] The State waived the first enhancement paragraph pertaining to Gordon's prior drug offense.

the evidence shows communication and emotional reactions by both Gordon and J.B. based on efforts to maintain a failing relationship.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.; see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

APPLICABLE LAW

In the instant case, the indictment alleged numerous instances of stalking by Gordon on different days over the course of a couple of weeks, including calling J.B. repeatedly, sending J.B. repeated electronic communications, and showing up and entering J.B.'s residence without her permission. Under the Penal Code, a person commits the offense of stalking if, as relevant here:

the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) constitutes an offense under Section 42.07 [the harassment statute], or that the actors knows or reasonably should know the other person will regard as threatening: . . . bodily injury or death for the other person;

(2) causes the other person . . . to be placed in fear of bodily injury or death . . . or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

> (3) would cause a reasonable person to . . . fear bodily injury or death for . . . herself; . . . or feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

TEX. PENAL CODE ANN. § 42.072(a).

Section 42.07 defines the offense of harassment. A person harasses another if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person," as relevant here, "threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person," "causes the telephone of another to ring repeatedly," or "sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id.* § 42.07(a)(4), (a)(7).

ANALYSIS

J.B. and Gordon met on an online dating website and began dating shortly thereafter. The relationship progressed quickly, and Gordon moved into J.B.'s trailer home after dating only a few months. From the start, Gordon did not get along with J.B.'s children. J.B. testified that she observed other red flags that she "didn't quite understand." J.B. recounted that Gordon got into several arguments with her and her children. J.B. believed that Gordon was trying to isolate her from her family. He regularly accused J.B. of lying about her whereabouts and was suspicious that she was with another man.

On October 21, 2019, J.B.'s daughter was admitted to the hospital to give birth. J.B. went to the hospital to help her daughter. She did not return home until 2:00 a.m. the next morning. While J.B. was at the hospital assisting her daughter, Gordon became angry and repeatedly sent J.B. text messages. When J.B. returned home, Gordon began throwing things, breaking things, yelling at J.B., and calling J.B. "horrible names." J.B. testified she feared Gordon and left to stay with her friend for a couple of days. J.B.'s fear of Gordon stemmed from a story he told her about how he had once broken into the house of an ex-girlfriend and broke the legs of a man who was visiting her. While J.B. was with her friend, Gordon called and texted J.B. "incessantly," asking where she was. J.B. testified that she feared Gordon coming over and that she felt like she was being harassed and tormented. Gordon's actions that evening made J.B. feel alarmed, fearful for her safety, and embarrassed. Shortly thereafter, J.B. and Gordon ended their relationship and had little communication for a few days.

Despite breaking up, Gordon and J.B. had additional communication and encounters from October 26, 2019, through November 18, 2019. J.B. testified that, on November 8, 2019, she woke up and saw Gordon standing, uninvited, in her bedroom around 3:00 a.m. or 4:00 a.m. J.B. stated she felt afraid and scared that Gordon might hurt her. On November 12, 2019, J.B. texted Gordon about Gordon appearing in J.B.'s room again on November 11, 2019, stating: "You showing up in my room again, thinking

I'm doing something wrong. Now stop." She also emphasized to Gordon that: "It's over. Just stop."

On November 14, 2019, cell tower location data pinged Gordon's cellphone near J.B.'s trailer home from 3:05 to 5:00 a.m. J.B. testified that she had her son install locks because she did not want Gordon appearing in her bedroom at night; however, J.B. awoke early on November 16, 2019, with Gordon in her house, despite the fact that the new locks had been installed. Cell tower data corroborated J.B.'s testimony. Specifically, the data showed Gordon's cellphone pinging near J.B.'s residence around 4:29 a.m. on November 16, 2019. Wayne Glass, a detective with the Burleson Police Department, recounted that J.B. had texted Gordon on November 16, 2019, telling Gordon "I told you over and over, don't come here," asking how Gordon entered the home, and telling Gordon that he made her feel unsafe.

On November 17, 2019, cell tower data pinged Gordon's cellphone near J.B.'s workplace from 11:03 a.m. to 1:30 p.m. Additionally, Gordon messaged and called J.B. multiple times while only receiving a single call back, Gordon texted that he would be coming over and that he was "on [his] way," despite J.B.'s prior requests that he not come over. On the evening of November 17, 2019, J.B. called the Burleson Police Department to ask for a criminal trespass warning to be issued.

On November 18, 2019, at around 7:00 p.m., Gordon appeared at J.B.'s trailer home, banged on windows and doors, and demanded his cable box. In response to

Gordon's actions that evening, J.B. called the Burleson Police Department. Gordon was arrested, and Sergeant Cameron Pilgrim of the Burleson Police Department found J.B. on her kitchen floor in an upright fetal position on her knees and huddled over. J.B. recounted that Gordon's actions throughout their relationship made her feel harassed, alarmed, and threatened.

Viewing the evidence in the light most favorable to the verdict, the jury could rationally conclude that Gordon, on more than one occasion and pursuant to the same scheme or course of conduct directed at J.B., engaged in harassing behavior, including repeatedly calling, texting, and breaking into her trailer home, that J.B. regarded as threatening bodily injury or that caused J.B. to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *See* TEX. PENAL CODE ANN. §§ 42.07, 42.072; *see also Zuniga*, 551 S.W.3d at 732-33. We therefore conclude that a rational jury could have found Gordon's conduct satisfied the essential elements of stalking beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. §§ 42.07, 42.072; *see also Zuniga*, 551 S.W.3d at 732-33. As such, the evidence is sufficient to support Gordon's conviction for stalking.

And to the extent that the evidence conflicts, we are to defer to the jury's resolution of such inconsistencies in the evidence. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to the jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an

evaluation of credibility and demeanor, which the jury is in a better position to judge."). We overrule Gordon's second issue.

## Burglary of a Habitation

In his first issue, Gordon asserts that there is insufficient evidence to support his conviction for burglary of habitation with intent to commit a felony, specifically stalking. We disagree.

APPLICABLE LAW

A person commits the offense of burglary of habitation with intent to commit a felony if, without the effective consent of the owner, the person enters a habitation with intent to commit a felony. *See* TEX. PENAL CODE ANN. § 30.02(a). Stalking is a felony of the third degree. *See id*. § 42.072(b).

In this issue, Gordon contends that the evidence does not establish he entered a habitation without the effective consent of J.B. "Effective consent is defined as assent in fact, whether express or apparent, and includes assent by a person legally authorized to act for the owner." *Mims v. State*, 434 S.W.3d 265, 273 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see* TEX. PENAL CODE ANN. §§ 1.07(a), (11), (19), 31.03(3). Whether a defendant had effective consent to enter "must be measured at the time of the accused's alleged criminal act." *Morgan v. State*, 501 S.W.3d 84, 92 (Tex. Crim. App. 2016) (holding that a boyfriend who previously had access to property nevertheless entered without effective consent when the property owner's testimony "made it clear that, at the time of

the offense, she and [defendant] had been arguing [and she] had locked him out of the apartment").

ANALYSIS

In arguing that he had effective consent to enter J.B.'s trailer home, Gordon emphasizes that he previously lived at J.B.'s trailer home, that he had a key to the trailer home, and that J.B. would, on occasion, allow him to wait in the trailer home until she arrived from work.

However, J.B. testified that on at least three occasions Gordon entered her trailer home without her consent.[2] Specifically, J.B. recounted that, on November 8, 2019, and after she had broken up with Gordon, she woke up and saw Gordon standing, uninvited, in her bedroom at around 3:00 a.m. or 4:00 a.m. This scared J.B. Gordon once again entered J.B.'s trailer home, uninvited, on November 11, 2019. This prompted J.B. to text Gordon on November 12, 2019, stating: "You showing up in my room again, thinking I'm doing something wrong. Now stop." She also emphasized to Gordon that: "It's over. Just stop." As a result of the second unauthorized entry by Gordon, J.B. had her son install new locks. Despite installing the new locks, in the early morning hours of November 16, 2019, J.B. awoke to find Gordon in her house once again. Detective Glass

---

[2] It is undisputed that J.B. and her son paid the rent for the trailer home that Gordon was alleged to have burglarized. Gordon's name was not on the lease for the trailer home, nor did he pay any bills at the trailer home, except for cable. Thus, J.B. was the "owner" of the trailer home at the time of the commission of the offense. *See Morgan v. State*, 501 S.W.3d 84, 92 (Tex. Crim. App. 2016) ("The 'owner' is who, *at the time of the commission of the offense*, had the greater right to possession of the property." (emphasis in original) (citing *Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986)).

recounted that J.B. had texted Gordon on November 16, 2019, telling Gordon "I told you over and over, don't come here," asking how Gordon entered the home, and telling Gordon that he made her feel unsafe.

The evidence above establishes that J.B. did not give Gordon permission to enter the trailer home, despite the fact that they had previously lived there together. *See Morgan*, 501 S.W.3d at 92 ("This Court has held that, the testimony of an owner that she did not give permission to enter the habitation is 'sufficient to establish the absence of effective consent.'" (quoting *Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. [Panel Op.] 1980))). Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have reasonably believed that Gordon entered J.B.'s trailer home without her effective consent. *See* TEX. PENAL CODE ANN. §§ 1.07(a), (11), (19), 31.03(3); *Morgan*, 501 S.W.3d at 92; *Mims*, 434 S.W.3d at 273; *see also Zuniga*, 551 S.W.3d at 732-33.

Additionally, because we have concluded that the evidence is sufficient to support Gordon's conviction for felony stalking, we reject Gordon's sufficiency complaint regarding the element of intent to commit a felony on the burglary-of-a-habitation charge. We therefore conclude that the evidence is sufficient to support Gordon's conviction for burglary of a habitation with intent to commit a felony. *See* TEX. PENAL CODE ANN. § 30.02(a); *see also Zuniga*, 551 S.W.3d at 732-33. We overrule Gordon's first issue.

**Texas Rules of Evidence 403 and 404(b)**

In his third issue, Gordon claims that the trial court abused its discretion by allowing the testimony that he previously entered an ex-girlfriend's home and broke a person's legs. Specifically, Gordon asserts that the admission of this evidence violates Texas Rules of Evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b).

STANDARD OF REVIEW

We review the trial court's admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz*, 279 S.W.3d at 344. "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *Id.*

RULE 404(B)

Evidence of other crimes, wrongs, or acts is not admissible to prove a person's character in order to show action in conformity therewith. TEX. R. EVID. 404(b). It may, however, be admissible for other purposes, such as proving motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *Id.* "The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at, 343. "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). "The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.3d 707, 709 (Tex. Crim. App. 1996)). "Whether extraneous[-]offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Here, Gordon argues that the trial court erred by admitting testimony that Gordon once told J.B. he broke into the house of an ex-girlfriend and broke the legs of a man who was visiting her. Gordon claims that the testimony had "a harmful effect on the jury as the jury is left to believe that he has committed these acts before and that he is violent, which, in turn, if not convicted, he will do these acts again."

Rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted. *See Moses*, 105 S.W.3d at 626. Further, extraneous offenses are admissible to rebut theories raised by the testimony of a defense witness during direct examination or a State's witness during cross-examination. *See*

*Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005); *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1996).

At trial, Gordon's defensive theories were that he did not commit the felony offense of stalking, that he and J.B. were trying to get their relationship back on track, and that his visits to J.B.'s trailer home were always with her consent. These theories were noted in Gordon's opening statement and extensively developed during cross-examination of J.B. Additionally, the record reflected Gordon's controlling, demeaning, jealous, and violent behaviors. Further, the story Gordon told of breaking into the home of an ex-girlfriend and then breaking the legs of her new love interest served as a warning to J.B. about cheating and the consequences of ending a relationship with him. This evidence was also used to explain why J.B. continued to communicate with Gordon through texts, cell phone calls, and Facetime, to give him the impression that reconciliation was a possibility to avoid harm. It also explained why J.B. felt threatened and afraid when Gordon entered her trailer home on several occasions, uninvited, during early morning hours. Furthermore, this evidence also showed that Gordon's repeated intrusions into J.B.'s trailer home was done knowingly. We therefore conclude that this evidence was admissible. *See* TEX. R. EVID. 404(b). Accordingly, we cannot say that the trial court abused its discretion by admitting the extraneous-offense evidence pursuant to Rule 404(b). *See De La Paz*, 279 S.W.3d at 343; *see also Prible*, 175 S.W.3d at 731.

RULE 403

Rule 403 of the Texas Rules of Evidence allows the exclusion of relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence TEX. R. EVID. 403. Gordon complains on appeal that the probative value of the extraneous-offense evidence was substantially outweighed only by the danger of unfair prejudice.

Probative value refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Valadez v. State*, No. PD-0574-19, 2022 Tex. Crim. App. LEXIS 217, at \*11 (Tex. Crim. App. Mar. 30, 2022) (publish). Relevant evidence is presumed to be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). However, evidence may be unfairly prejudicial if it prompts the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Valadez*, 2022 Tex. Crim. App. LEXIS 217, at \*11. Thus, a court must balance the probative force of the proffered evidence and the proponent's need for it against any tendency of the evidence to suggest a decision on an improper basis. *Id.* at \*\*11-12.

A trial judge has substantial discretion in balancing probative value and unfair prejudice. *See Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006). All testimony

and physical evidence will likely be prejudicial to one party or the other. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value (i.e., the evidence is unfairly prejudicial) that Rule 403 is applicable. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

When conducting a Rule 403 balancing test, courts should consider: (1) the evidence's probative force; (2) the proponent's need for the evidence; (3) the evidence's potential to suggest a decision on an improper basis; (4) the evidence's tendency to distract the jury from the main issues; (5) any tendency for the jury to give the evidence undue weight because it has not been fully equipped to evaluate the evidence's probative force; and (6) the likelihood that presenting the evidence will consume an inordinate amount of time. *See Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

In his Rule 403 argument, Gordon asserts that the testimony caused the jury to believe that he has committed "these acts before and that he is violent which, in turn, if not convicted, he will do these acts again." Thus, Gordon contends the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

The trial court could have reasonably concluded that any prejudice from the admitted testimony would not be substantially outweighed by the testimony's probative value. The probative force of J.B.'s testimony and the State's need for her testimony was considerable because the testimony rebutted Gordon's previously discussed defensive

theories and also addressed J.B.'s state of mind and the intent element for the offense of burglary of a habitation. Additionally, the charge included extraneous-offense instructions limiting the use of the evidence only for admissible purposes under Rule 404(b). This mitigates against a finding that the evidence impressed the jury in an irrational way. And finally, the record does not show the complained-of testimony consumed an inordinate amount of time or improperly inflamed the passions of the jury such that a decision was rendered on an improper basis.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the complained-of evidence and its probative value. *See id.*; *see also Conner*, 67 S.W.3d at 202. Thus, we cannot conclude that the trial court abused its discretion by admitting the complained-of extraneous-offense evidence under Rule 403. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42; *see also De La Paz*, 279 S.W.3d at 343; *Prible*, 175 S.W.3d at 731. We overrule Gordon's third issue.

## Conclusion

We affirm the judgments of the trial court.

MATT JOHNSON
Justice


Before Chief Justice Gray,
        Justice Johnson,
        and Justice Smith
Affirmed
Opinion delivered and filed August 10, 2022
Do not publish
[CRPM]

